Good morning, Your Honors. Thank you, Your Honors.  Your Honors, I want to just jump right into it. Here we have a motion to dismiss by, two motions to dismiss, Docket Entries 35 and 36, related to the standing issue, intertwining both Article III standing and the statutory standing under the civil RICO claim. The district court then applies a standard under Federal Rule of Civil Procedure 12B1 and improperly weighs the evidence when there's other evidence in the record and there's been this intermingling or intertwining of both statutory and Article III standing issues. Can I ask you, before we get into an assessment of the district court's order, explain to me what I'll call the post-briefing events, the order and the final judgment are not collateral establishments. Okay. First of all, the parties are different. You have the matrimonial case, you don't have Mr. Martinez. So I was a little surprised by this, I hadn't noticed it the first time, but am I wrong that the entities were actually a party to the divorce proceeding? The entities were, in part, certain of the entities were, in part, certain parties related to assets that had moved around. That's my understanding. I mean, if they were within the caption, can they assert collateral estoppel here? I mean, isn't that good enough? Well, they can't. In fact, what had happened in that case, and in particular with regard to the last order, the order of August of 2017 that carried over into this year, that order which is still on rehearing right now. That doesn't matter for collateral estoppel. Right. So, one, the claims are different because we have, in that case, the matrimonial claims and the issues of equity. Right, but we're here on ... We're talking about issue preclusion, so the collateral estoppel effect, and the court says in the order, for the reasons stated above, the court hereby finds that Susan validly transferred her shares to NMTI to Jared effective May 7, 2010. That has been memorialized or incorporated into the final judgment. Which is subject to rehearing, but ... Fine, but that doesn't matter. Yes. But the issue before the court on that was not ... They dealt specifically with the issue of the May 2010 partial order of settlement. I guess, I mean, does that matter? The fact that the parties were in court for some other purpose doesn't really matter to collateral estoppel. What matters is that the court issued here a determination with respect to an issue, which is the very issue that governs in this case, and said, yeah, valid transfer as of May 2010. Well, in part, and we have argument about how that issue plays out, because we've never had a finalization of the transfers, the escrow, the payments. None of that had taken place. But at that point, aren't you just asking us to conclude that the Florida court got it wrong? No. Look behind. So talk to me about the language that I just read to you. Right. So in terms of the collateral estoppel and what was before the court, the matrimonial court, in particular, we have an issue where in the third notice of judicial ... The third request for judicial notice, that whole transcript, where there was a very limited acceptance of testimony. So where you had testimony on the May 2010 agreement and the entering into it, every time there had been, and it's throughout the transcript, there had been questioning by Ms. Martinez's counsel getting into any other issues. It was narrow. The court said that goes beyond the issue of dealing with, was this a signed agreement? Was it an agreement that the parties had voluntarily entered into? Issues of fraud. Issues of criminality. Issues that went to, in many ways, some of the claims in this case. So I would submit, Your Honor, that there were no similarities of issues. The issues were not the same in the matrimonial case dealing specifically with the May 2010 agreement and the findings in August and then carried forward in May of 2018, or March of 2018, on that order. So issues were very narrowly construed. The judicial notice number three that has the hearing transcript from August of 2017 makes that clear with all the objections and the narrowing of the scope of the proceeding to not include anything outside the matrimonial case claims, which can't be brought in this case. So you can't have the type of claims in this action, the Federal Civil RICO claims, brought in that case. You can't have, within the matrimonial case, those type of claims, as you couldn't have in this court, the matrimonial claims itself. And so the impact of that order going to equitable distribution is in that particular cause of action, which is not the same cause of action. Yes. So I think if we were talking about res judicata, or what I'll call claim preclusion, where you were seeking to, or where the other side, I guess, was seeking to sort of foreclose this entire lawsuit, you might be right. But where what we're talking about is issue preclusion, there is a determination with respect to an issue in that case, about transfer of shares in May 2010, that happens to have potentially dispositive impact in this case. But the fact that you couldn't bring RICO claims in the matrimonial action, you can't bring matrimonial claims in a federal court, I don't know that that's dispositive of a collateral estoppel. Well, I think, well, because of the limitation, because you have differing parties, because you have a limitation on the introduction of evidence, it does go to the issue preclusion itself. Plus, we have a factual record recognized in the district court that said that the appellees, the defendants in that case, did not dispute ownership of the shares. That went to one of the findings of the district court that was never appealed, there was no request for rehearing in the district court. What we have is this intermingling, again, of Article III standing issues, of statutory standing issues on injury, and in particular, the injury under RICO. We have precedent from this court in the Morrison v. Amway Corporation case, says when you get into that kind of circumstance and you have extrinsic evidence coming in, declaration in this case, you have other pleadings, then the court should have addressed these issues under a Rule 56, a Federal Rule of Civil Procedure 56 issue, and balanced, excuse me, and viewed the evidence in a light most favorable to Mrs. Martinez in terms of viewing the evidence. That's not what the court did. The court used a Rule 12b-1 analysis and weighed the evidence and found because there was no ownership interest, that there could be no injury. Because there could be no injury, there was no injury in fact for Article III standing, and then subsequently for the civil RICO standing. I think this court, when it's looked at the policy behind having the court, cautions the court in the Morrison case to say when you are encountering a circumstance on standing issues where the statutory and the Article III standing issues are very much intertwined as they are here, the court needs to apply the Rule 56 more deferential standard to the case of, again, Mrs. Martinez. We have a circumstance where, yes, there is a record in the matrimonial case, but it's not a claim, again, on all fours in any way like this case. We have pled in the amended complaint damage and injury to Mrs. Martinez's business or property interest. Those elements of the statutory claim are also sufficient for purposes of Article III standing injury in fact. In fact, looking at the details of the agreement from May of 2010 from the matrimonial matter, there's still other events that had to take place before there was any extinguishment of Mrs. Martinez's property interest in the Market Traders Inc. There were the issues of her, the money, the stock going to escrow at any point and still there remains. There could be no payments made on the stock value. The valuation issues and the lack of payment could present an issue where the interest doesn't transfer, but regardless, our pleading in particular paragraph 95 of the amended complaint addresses issues which are a continuation of events which show that she's been damaged having an interest. If that interest is in escrow, if that interest is hers, it's an interest of property or business that gives her an injury in fact as pled in the complaint and that the case can be remanded for the court to then, district court to then address on the merits the issues of injury and of her. Once you go beyond counsel, the issue of collateral estoppel, help me understand why the claim meets the heightened pleading requirements of 9B with respect to fraud, with respect to let's just say Lisa Estrada. I looked at the complaint regarding Lisa Estrada as the chief compliance officer and it is stated at the highest order of abstraction and with a model of brevity and I'm hard pressed to see how that meets the requirements of 9B that the precise statements documents are misrepresented or misrepresentations made have to be asserted, the time, place and person responsible for the statement, the content and manner in which the statement misled the plaintiff and what the defendants gained by the alleged fraud. That's clear as a bell. I looked at the complaint, the operative complaint regarding Estrada specifically reads as follows. Lisa Estrada was the chief compliance officer for I-Trade beginning in November 07, upon information and belief Estrada among others resumed direct management with ILQ following their prior management and administration, the acts of and then it lists the defendants were unlawful acts involving violation of bank secrecy law and mail fraud. That's the beginning, middle and the end of the allegations dealing with fraud. Am I missing something? If that is the beginning, middle and end, how does that satisfy the requirements of 9B? With regard to Lisa Estrada and her connection with ILQ which the amended complaint gets into much more specificity with ILQ as well as the market traders distributions, the dates of distributions, the continuing pattern which as cited in the amended complaint comes from the investigative work and filings of the National Futures Association in terms of its work and findings of fraud and criminality with regard to the various defendants. Yes, Lisa Estrada's position as officer is the ILQ entity and its relationship to market traders, to I-Trade and the other entities that deal with the specificity that I think your Honor is correct that Rule 9 requires in terms of pleading. That is the linkage there. However, that's not the basis for the district court's finding. Well, that hardly matters to me if you were wrong about that and that was a sufficient basis. But let me just see if I understand your answer to my question. Your answer is yes, it's true with respect to Lisa Estrada, the heightened pleading requirements of 9B are not met except in a derivative kind of way that others with respect to others, the requirements were pled with specificity and they are imputed to her and that she's responsible for their specific allegations of fraud. Is that essentially what you're saying? Essentially yes and with the corporate position she held also with ILQ. So you're saying that she was somehow a conspirator? Correct. Do you plead that? I believe we do, your Honor. That she joined an illegal conspiracy to commit fraud, particularly mail fraud and that the allegations of mail fraud were stated with specificity as to the others? Maybe it is there. I'm just looking for some help. So in terms of the amended complaint in the paragraph setting out the specific allegations, so it is a winding story because of the interrelatedness of the companies and the individuals involved. And so beginning in the amended complaint, it's specifically at paragraph 22 through the allegations really right up to paragraphs 87 with the predicate facts for the first count, the only count in the complaint. It goes through a story of, and again, through investigative work from the National Futures Board. Just asking a real simple question. My question in one line is, where do I find, she was a member of a conspiracy to commit fraud and we're imputing the acts of mail fraud of the others to her as a co-conspirator. These acts were made in the course of and in furtherance of the conspiracy and they're properly imputed to this co-conspirator. Thank you. Paragraph 65 through, through 87 your honor. Okay. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Mr. Baker. Thank you, your honors. Good morning and may it please the court. I just want to touch on a few issues that my colleague mentioned that kind of need to be clarified, corrected and cleared up. The appellees, with the exception of Estrada, were absolutely parties to the divorce proceeding. Absent her, every single one of them was served with process, made an appearance and vigorously litigated. So I take it you would concede that collateral estoppel wouldn't be a sufficient basis as to Estrada. No, I, I, your honor, I think. What do you think? She's in privy with them or? I think she's in privity with ITFX, which was also a party to the marital settlement agreement in the first place. So yes, I think that she is entitled to invoke collateral estoppel, especially defensively. All of their, her interests were aligned and, and all of the claims here were brought against her in her capacity, claims in her capacity as the chief compliance officer of ITFX and later on whatever was happening with, with ILQ in that storyline of the amended complaint. But even beyond that and, and, you know, putting aside the fact that collateral estoppel says, you know, this issue was litigated, it was basically a full day trial. It was, you know, eight hours of testimony, the transcripts before you. What I'm hearing is still an argument of this was wrong because the settlement agreement was procured by fraud, coercion or duress and the trial court, you know, sustained objections to those. Well, in the order. I think he's also saying it's not over with yet. Well, there's. If it's not over and that maybe we shouldn't take notice of the doctrine of collateral estoppel. Well, I think once the final judgment was issued, it's preclusive effect applies until it's, until it's reversed under the law. There has been a final judgment. There has been a final judgment, yes. Is there any appeal? There are currently two motions for rehearing that are pending. One filed by the husband and one filed by Mrs. Martinez. So no, the appeal has not, but it's been a better part of a decade and I would be shocked if there was not an appeal, but to that point, I'm sorry, the appeal time hasn't run. It has not. The clock hasn't started ticking on that yet, but the neither motion for rehearing attacks the court's order on enforcing the settlement agreement. So they're dealing with different issues. Right. They're dealing with, you know, statues and jewelry and I think a Rolls Royce, but this issue, whether the appellees are entitled, you know, to rely upon two separate court orders, an enforcement order and a final judgment saying you transferred your shares on May 7th, 2010. That's it. It's black letter for the law that interlocutory orders are merged into final judgments and I think I heard counsel concede that. So that's there. She doesn't have standing to sue for whatever purported interest in MTI she has. And to that end, there's also been a kind of a moving target here with what her purported injury is. Now, there's 10 allegations in the amended complaint that, you know, cite injury. All of them are conclusory, save one, and that's paragraph 87. She says my property interest in MTI was injured when, because MTI participated in this criminal conspiracy that decimated the value of MTI. That is wholeheartedly a derivative claim. That is wholeheartedly something that is completely dismissed or dislodged from the alleged predicate acts that cannot satisfy proximate cause under either RICO standard. Now, in fairness, I guess, to her position, though, I thought really, at least by the time the briefing wound up, she had said, well, it's really paragraphs 95 and 96. Those are the better allegations of sort of direct injury as opposed to derivative. Sure. So paragraph 95 deals with cash distributions and share allocations. Those share allocations happened 2013, 2014, after she transferred her shares. In fact, those share allocations were part of the reason why the settlement order was passed upon those, on the settlement agreement. Moreover, I think we have to remember that this is not a substantive 1964C claim. It's a 1964D claim for conspiracy, and if she's claiming injury from share allocations, that's not an act of racketeering. And under this court's precedent in Beck, which was affirmed by the Supreme Court, if you're claiming conspiracy and you're claiming an injury from acting further into the conspiracy, that act has to be an act of racketeering. Their share allocations have no basis to racketeering. It's not connected at all. And on top of that, the cash distributions, that's derivative too, because that's MTI's cash. If there's no further questions, I'll just rely on the material submitted to the court and leave it at that, but I'll yield my time to the court. All right. Mr. Baker. Thank you, Your Honors. Just briefly, Your Honors, with regard to the claim preclusion issue, and back to that, just so we're clear, issue preclusion, not claim preclusion, right? Different things. Okay. And it matters. It actually matters because I actually think you're right about claim preclusion. I just, I've probably communicated this. I think you might be wrong about issue preclusion. So on the third judicial notice request and the transcript from the August hearing, page 78 of the hearing transcript, the court makes clear, the matrimonial court, what's being heard, because you have Ms. Martinez's attorney in that matter trying to explore other issues, David Smith's payments, other issues. And the court says, beginning at line 14, certainly you have the ability to cross-examine and present your issues, but what is before the court today deals with a motion to enforce the settlement agreement. There has been no separate pleading filed on behalf of the wife alleging fraud or any of the other grounds that will allow me to set aside and allow you to introduce this evidence that is beyond the scope of the direct examination. So here, when we talk about these issues regarding these issues that the appellees are saying are preclusive, have preclusive effect in this matter, those issues were never gotten to in the matrimonial case. Those are issues that you might have had some of the similarity in parties, but the issues were not addressed in the courts dealing with the May 2010 agreement. Except, I mean, except in fairness, in the plain language of the order that the court wrote down, there was a valid transfer as of May 7, 2010. I mean, I guess we can say that wasn't really what the hearing was about, but for some reason the court wrote down in its order, there was a valid transfer. The court did write, it's one sentence, Your Honor, is correct, however, however, the agreement itself that relates to that transfer says these stocks are to be held in escrow, right? They're supposed, there are other conditions that address that ownership interest, that property interest, the business interest of Ms. Martinez, and that is that when you, that goes into escrow, there needs to be payments, that's, and again, the district court didn't address this. It goes to, is there a business or property interest that remains? And again, paragraphs 95 and 96 of the amended complaint also spells out the kind of damage that could arise, had that issue been before the district court, in terms of the kind of injury she suffers, regardless of whether the stock is moved into the escrow or the May 2010 agreement. Thank you, Your Honor. Thank you. We have your case.